**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| Granville E. Dennis, Jr., | ) | C/A No.: 3:08-cr-889-JFA |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| United States of America. | ) | |
| | ) | |

     Granville E. Dennis, Jr. ("Defendant"), filed a motion to vacate, set aside, or correct his conviction and sentence pursuant to 28 U.S.C. § 2255. In his petition, he contends that he received ineffective assistance of counsel and that the prosecutor. The government has moved for summary judgment in this case, and after thoroughly reviewing the record in this case, along with the parties' briefs and applicable law, the court has determined that an evidentiary hearing is not necessary, as there is no dispute over any material fact, and it grants the government's motion for summary judgment.

## BACKGROUND

     The defendant was named in a one-count indictment filed in this court's district on September 2, 2008, and was charged with conspiracy to make, utter, or possess counterfeit securities in violation of 18 U.S.C. § 371. In discussing his options with his trial counsel, the defendant's trial counsel informed him that because of his immigration status, there might be significant consequences associated with his case. Therefore, his lawyer advised him that a consultation with an immigration attorney was necessary to best address any immigration or deportation issues that may arise. In giving this advice, his lawyer told the defendant to explain to the immigration lawyer the charge he faced. There is no dispute over the fact that the

defendant adhered to his lawyer's advice and consulted with an immigration attorney in Atlanta, Georgia via telephone. The defendant and the immigration lawyer went over the indictment, as well as the discovery in the case, to discern whether or not he was going to be subject to deportation. After reviewing this information, the immigration attorney informed the defendant that so long as he was sentenced to a term of imprisonment shorter than 12 months, he would avoid deportation proceedings. The defendant shared this information with his trial lawyer, and his trial lawyer also contacted the immigration attorney by telephone to discuss the defendant's case. The immigration attorney shared with the defendant's trial counsel this same information regarding the importance of the defendant's sentence being shorter than 12 months. The defendant's trial counsel also e-mailed the immigration attorney to ask whether or not a term of supervised release, which would follow a sentence of less than 12 months, would impact the defendant's deportation situation, and in the e-mail, it is clear that a sentence of less than 12 months was the primary factor, if not the only factor, discussed between the lawyers.

Relying on this information, the defendant pled guilty on February 26, 2009, to the conspiracy charge. He was sentenced to four months of imprisonment, to be followed by four months of home confinement and three years of supervised release. The court also ordered Defendant to pay $15,000 restitution and a $100 special assessment. He did not file an appeal in his case and has since served his sentence. In addition to his sentence, the defendant is now subject to deportation because of his conviction, despite the immigration lawyer's assurances that he would not be subjected to such action if he received less than a 12-month sentence. This result arises from the fact that the defendant's crime, as alleged in the indictment, included a sum of money over $10,000, which made it an "aggravated felony." The defendant was never advised that the sum of money involved with his crime would subject him to deportation, and he now

claims that his lawyer was ineffective for failing to advise him of this issue. Had he known this information, he claims he would have structured his negotiations with the government to avoid deportation or would have gone to trial. Therefore, he asks the court to set aside his conviction and sentence. The government has filed a motion for summary judgment to which the defendant has responded.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered when a moving party has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Summary judgment should be granted in those cases where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law. *McKinney v. Bd. of Trustees of Mayland Community College*, 955 F.2d 924, 928 (4th Cir. 1992). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## ANALYSIS

Last year, the United States Supreme Court determined that a criminal defendant's Sixth Amendment right to effective assistance of legal counsel includes advice from his or her counsel as to whether or not a plea carries a risk of deportation. *Padilla v. Kentucky*, 130 S. Ct. 1473, 1486 (2010). Because the defendant's plea in this case occurred prior to the Court's decision in

*Padilla*, the threshold issue before the court is whether or not *Padilla*'s holding retroactively applies to the defendant's case. Finding that *Padilla* is not retroactive, the court grants the government's motion for summary judgment and denies the defendant's petition.

First, it should be noted that the Court in *Padillla* did not expressly state that its ruling was to have retroactive effect. *See United States of America v. Hernandez-Monreal*, No. 10-477, 2010 U.S. App. LEXIS 24917, at *3 (4th Cir. Dec. 6, 2010) ("Furthermore, nothing in the *Padilla* decision indicates that it is retroactively applicable to cases on collateral review.") (per curiam). Therefore, the court must utilize the framework pronounced by the Supreme Court in *Teague v. Lane*, 489 U.S. 288 (1989), which instructs how the question of retroactivity should be resolved for cases on collateral review. In analyzing whether or not a ruling by the Supreme Court regarding a criminal procedure has retroactive application, the court must determine whether or not the Court created a new rule or, instead, applied existing precedent in a new context. Under the *Teague* analysis, new rules will not be applied or announced in cases on collateral review, unless they fall into one of two exceptions.[1] *Id.* at 311–13. When the Court overturns its own prior precedent, clearly a new rule is established. *Saffle v. Parks*, 494 U.S. 484, 488 (1990). "[I]t is more difficult, however, to determine whether [the Supreme Court] announce[s] a new rule when a decision extends the reasoning of [its] prior cases." *Id.*; *see also Teague*, 489 U.S. at 301. The *Teague* Court stated:

---

[1] The two exceptions to the *Teague* rule are as follows: First, "a new rule should be applied retroactively if it places certain kinds of primary private individual conduct beyond the power of the criminal law-making authority to proscribe." *Teague*, 489 U.S. at 311 (internal quotation omitted). Second, courts may retroactively apply "watershed rules of criminal procedure." *Id.* The Supreme Court has made clear that this is a narrow exception for rules that are "central to an accurate determination of innocence or guilty." *Id.* at 313. The defendant does not base his petition on either of these exceptions.

> In general, however, a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final.

*Teague*, 489 U.S. at 301 (emphasis in original) (internal citation omitted). In reference to the *Teague* analysis, the Supreme Court later stated, "Under this functional view of what constitutes a new rule, our task is to determine whether a . . . court considering [a defendant's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [the defendant] seeks was required by the Constitution." *Parks*, 494 U.S. at 489.

With this legal framework in mind, the defendant contends the court should find that *Padilla* did not announce a new rule, but rather applied the existing precedent of *Strickland v. Washington*, 466 U.S. 668 (1984), to a new set of facts, making its holding retroactive to his case. To support his argument, the defendant notes that the majority in *Padilla* contemplated the consequences of its decision to guilty pleas and how it may affect the importance of protecting the finality of convictions obtained through guilty pleas. The defendant also highlights the majority opinion's comments respecting the professional norms of criminal defense lawyers, and how for at least the past 15 years, professional norms "generally imposed an obligation on counsel to provide advice on the deportation consequences of a client's plea." *Padilla*, 130 S. Ct. at 1485.

The court certainly appreciates the defendant's position, but it is not persuaded that it is the right one to adopt. As already noted, the Supreme Court has explained that in deciding whether or not a new rule is created, the court should consider whether it would have felt compelled by existing precedent to conclude that the rule was required by the Constitution. *Parks*, 494 U.S. at 489. Obviously, at the time the defendant's conviction became final, *Padilla* had yet to be decided, and the defendant has not directed the court to other Supreme Court

precedent that would have dictated a similar finding. In fact, most of the lower federal courts' decisions on this issue had concluded the opposite. For example, the law of the Fourth Circuit at the time of the defendant's decision to plead guilty dictated that "an attorney's failure to advise a client that deportation may result from a conviction does not constitute ineffective assistance of counsel." *United States v. Yearwood*, 863 F.2d 6, 7 (4th Cir. 1988), *abrogated by Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). Therefore, while it may have been the professional norm for criminal defense lawyers to advise their clients of possible deportation consequences, neither the defendant's trial counsel nor this court would have had any indication that this best practice was an actual constitutional right. "[T]he habeas court need only apply the *constitutional standards* that prevailed at the time the original proceedings took place," *Teague*, 489 U.S. at 306 (emphasis added) (internal quotation omitted), and based on the Fourth Circuit's holding in *Yearwood*, this court would not have felt compelled to find such a constitutional standard existed at the time of the defendant's decision to plead guilty.

To be sure, the Supreme Court concluded that the two-prong ineffective assistance of counsel standard announced in *Strickland v. Washington* applied to Padilla's case, which forms the basis of the defendant's contention that *Padilla* merely applied existing precedent to a new context rather than established a new rule. But prior to concluding that the *Strickland* analysis applied to Padilla's claim, the Court had to first address the role of the direct versus collateral consequences distinction, which many lower courts had invoked to resolve ineffective assistance of counsel claims based on an allegation of a failure to be advised about the risk of deportation. It was only after the Court concluded that the direct versus collateral distinction was "ill-suited" to evaluate a *Strickland* claim based on the specific risk of deportation did it conclude "that advice regarding deportation is not categorically removed from the ambit of the *Sixth*

*Amendment* right to counsel." *Padilla*, 130 S. Ct. at 1482 (emphasis in original). The court believes this finding of the Court makes its decree a new rule, for the Supreme Court has never addressed the issue of whether or not the direct versus collateral consequence is appropriate to use in defining the scope of constitutionally "reasonable professional assistance" required under *Strickland*. In other words, although the Supreme Court did not overturn any precedent it had established, it did, for the first time, expand the Sixth Amendment right to counsel to cover the immigration implications of a criminal conviction by rejecting several lower courts' method of evaluating the issue.

The court finds further support for its decision that *Padilla* created a new rule of criminal procedure in the Supreme Court's recitation of the history of the law relating to deportation. In *Padilla*, the majority acknowledged the 1990 changes to deportation law, through which Congress eliminated the judicial recommendation against deportation procedure, as well as the changes in 1996, through which Congress eliminated the Attorney General's authority to grant discretionary relief from deportation. The fact that Congress recently removed the decision of deportation from the discretion of the Judicial and Executive branches caused the Court great concern. As the Court stated:

> These changes to our immigration law have dramatically raised the stakes of a noncitizen's criminal conviction. The importance of accurate legal advice for noncitizens accused of crimes *has never been more important*. These changes confirm our view that, as a matter of federal law, deportation is an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes.

*Padilla*, 130 S. Ct. at 1480 (emphasis added and footnote omitted). Therefore, the Court was mindful of the automatic nature deportation has taken in recent years with respect to certain criminal convictions, and it thus derived a rule fit for these circumstances. What is more, the Court further formulated a sliding scale to assess the specific duty owed by a criminal defense

lawyer to his or her client based on the clarity of the deportation consequences of a particular plea. *Padilla*, 130 S. Ct. at 1483. This extrapolation of the means by which lower courts should evaluate this Sixth Amendment right lends support to a view that *Padilla*'s holding was a new rule. As such, the court finds that the decision broke new ground and is not retroactively applicable to the defendant's case. Because this is the only basis for his § 2255 petition, the court grants the government's motion for summary judgment and denies the defendant's petition. It is further ordered that a certificate of appealability is denied because the petitioner has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).[1]

     IT IS SO ORDERED.

April 19, 2011                                          Joseph F. Anderson, Jr.
Columbia, South Carolina                   United States District Judge

---

[1]   A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (West 2009). A prisoner satisfies this standard by demonstrating that reasonable jurists would find both that his constitutional claims are debatable and that any dispositive procedural rulings by the district court are also debatable or wrong. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir.2001). In the instant matter, the Court finds that the Petitioner has failed to make "a substantial showing of the denial of a constitutional right."